Argued November 29; reversed and remanded December 13, 1949

# STATE *v.* PACE

212 P. 2d 755

*Laurence L. Morley* and *William R. Thomas,* of Lebanon, argued the cause for appellant. On the brief were Arlo Cornell, of Sweet Home, and Morley & Thomas, of Lebanon.

*Melvin Goode,* District Attorney, and *Courtney R. Johns,* Deputy District Attorney, both of Albany, argued the cause and filed a brief for respondent.

BELT, J.

Defendant, a married man fifty years of age, was convicted of the crime of rape on his daughter, Barbara Jean Pace, who at the time of the alleged offense was fourteen years of age and a sophomore in the high school at Sweet Home, Oregon. He was sentenced to serve a term of twenty years in the penitentiary.

The contention of the defendant that there is no evidence to support the judgment of conviction and that he was entitled to a directed verdict of acquittal requires a brief statement of the facts. The indictment charges that the crime occurred on August 20, 1948. The State in the early part of its case in chief elected

to rely "on the claimed act taking place in the Pace household on or about August 20, 1948, in the bedroom of Barbara Jean Pace and Shirley Pace." To such election, counsel for defendant interposed the following objection:

"We object to the introduction of any evidence for the purpose of proving a crime on any other than the Fairview occurrence which has previously been elected by the State in its evidence."

The Court properly overruled this objection as at such time there was no evidence tending to show the commission of the crime at any place other than that designated by the State in its election.

Defendant and his wife, together with three minor children, lived in a four-room house at Sweet Home, Oregon. The house had two bedrooms, a kitchen, and a living room. Defendant slept on a davenport in the living room; his wife and youngest daughter, Velda Modena, aged six years, slept together in one bedroom; and Barbara Jean, the prosecutrix, and her sister, Shirley, aged twelve years, slept in the adjoining bedroom.

In our opinion there is some substantial evidence tending to show that defendant committed the crime charged at the time and place upon which the State relies. Barbara was a very reluctant witness to testify against her father. She was greatly embarrassed and confused. It was a terrible ordeal for any young girl to experience. If the evidence introduced by the State is true, Barbara did not have much of a chance in life. She testified about having sexual intercourse with her father on numerous occasions since she was five years old. She said it happened so often "it became a habit." Barbara testified about her father dressed

in his underwear coming into her bedroom after she had gone to bed and that "we would have intercourse." She testified that it was about August 20 "or right around there" that her father had "molested" her.

■ On direct examination Barbara thus testified:

"Q Did your father come into your bedroom at night?

"A Yes.

"* * *

"Q Did he come in about the 20th of August, along in there some time?

"* * *

"A I can't remember; it happened so often, I I can't remember the date.

"Q What happened when your father came into the bedroom there about that time?

"A I don't really remember. So much has happened since that time I can't remember what really went on at that time.

"* * *

"Q How was your father dressed when he came in the bedroom?

"A You mean around the 20th?

"Q When he did come into the bedroom with you and Shirley?

"A Usually, he just had his underwear on.

"* * *

"Q Where did he go?

"A He usually came to the bed where I was at.

"* * *

"Q What did he do in there?

"A We would have intercourse.

"* * *

"Q It is alleged in the complaint that it occurred in August. Do you know whether that is about the date?

"A I don't know whether it was in August, it happened so often since I was five."

Cross examination:

"Q Each of these times you say this has happened to you, the multitude of times, all of that is just as factual as the fact that it happened around August 20th?

"A Yes.

"Q And if it didn't happen those other times, it didn't happen August 20th either?

"A I don't say it was August 20th, but it was sometime around there.

" * * *

"Q Were you just about as confused on or about August 20th when this act with your father was supposed to have taken place?

"A I was so confused during the past year, I couldn't do my school work, and I couldn't think."

We agree that the testimony of the prosecutrix relative to the time the alleged crime was committed is in some particulars quite vague and indefinite, but we think this objection goes to the weight of such evidence and not to its admissibility.

Shirley testified without objection about her father coming into the bedroom at night and getting into bed next to Barbara and having sexual intercourse with her sister, but she was very indefinite and uncertain as to the time the sexual act occurred. On cross examination she admitted that she did not see the act committed but asserted that she heard the bedsprings "squeak."

Zella Pace, wife of the defendant, testified that "during the month of August, 1948," she heard the defendant go into the bedroom where Barbara and Shirley were sleeping and that she "could hear the bedsprings, and with my knowledge, I knew what was going on."

■ The State was not required to establish that the crime was committed on the precise date alleged in the indictment. It was, however, in keeping with its election, required to show that the crime was committed "on or about August 20, 1948," and in the bedroom of the Pace household. The State, in using the words "on or about" in making its election, did not thereby put the time of the offense at large but meant that the time, August 20, 1948, was stated with approximate accuracy. *Stephen v. State,* 207 Ind. 388, 193 N. E. 375; *Parker v. State,* 63 Ind. App. 671, 113 N. E. 763; *Newcomer v. Ament,* 214 Iowa 307, 242 N. W. 82; *Crawford v. Arends,* 351 Mo. 1100, 176 S. W. (2d) 1; *State v. Rodman,* 44 N. M. 162, 99 P. (2d) 711. The very object and purpose of requiring the State to make an election would be defeated if conviction of the defendant could be based on evidence of his having sexual intercourse with the prosecutrix at any time within the three-year statutory period. As stated in 23 C. J. S., Criminal Law, 746, § 1196:

> "Where the prosecution elects to proceed for an offense as of a certain date, the instructions should limit the jury to finding whether the offense was committed on that date." Citing numerous authorities in support of the text.

Time particularly becomes material where an alibi is claimed. *State v. Francis,* 126 Or. 253, 269 P. 878; *State v. Coss,* 53 Or. 462, 101 P. 193; *People v. Waits,* 18 Cal. App. (2d) 20, 62 P. (2d) 1054; *State v. Campbell,* 324 Mo. 249, 22 S. W. (2d) 645; *Landon v. State,* 83 Okla. Crim. Rep. 141, 166 P. (2d) 781, 174 P. (2d) 266; *State v. Waid,* 92 Utah 297, 67 P. (2d) 647; *State v. Coffelt,* — Wash. —, 204 P. (2d) 521; 53 Am. Jur., Trial, 498, § 645.

■■ Where the evdence discloses only one offense within the statutory period, the time of commitment thereof is not material. If, however, the evidence tends to show more than one similar act, the State is required to make an election and time becomes material. *State v. Francis,* supra; 44 Am. Jur., Rape, 977, § 119. We conclude that there is some substantial evidence tending to show that the defendant had sexual intercourse with the prosecutrix at the time and place relied upon by the State in its election.

■■ It is urged that the Court erred in failing to direct a verdict of acquittal for the additional reason that the prosecutrix was not mentally competent to testify. No question was raised as to the competency of such witness until it appeared at the conclusion of her cross examination that she was in the State Hospital for the insane for psychiatric treatment. This poor girl was, on September 15, 1948, committed to the Hillcrest school, a state institution to care for "wayward" girls. Such commitment followed her confession of having burned her home on September 11, 1948, which she said she was induced to do by her father. The house was insured for $3,000.00. The superintendent of such school, Mrs. Katharyn Loaiza, testified that at the time this girl entered Hillcrest she was in a "very serious emotional state," but had shown great improvement since being transferred to the State Hospital. In her opinion, the prosecutrix was not insane. There has been no adjudication that the prosecutrix is an insane person, and there is nothing in the record of this trial to indicate her insanity. The mental capacity of the prosecutrix was a question for the trial court to decide in the exercise of a sound legal discretion. 44 Am. Jur., Rape, 976, § 115. It is reasonable to assume that the defendant

knew the mental condition of Barbara before and at the time she was offered as a witness. If he had any question as to her mental capacity to testify, he should have made timely request for a voir dire examination. 3 Wharton, Criminal Evidence (11th ed.) 1989, § 1151. Barbara was received at the State Hospital for treatment on her own voluntary application, and under the statute, § 127-214, O. C. L. A., she could leave such institution after having given thirty days' notice of her intention so to do. We see no merit in the contention that the prosecutrix was not a competent witness.

In prosecutions for statutory rape, evidence of other similar criminal acts with the same child is admissible to show the lustful disposition of the defendant and the probability of his having committed the particular act charged in the indictment. *State v. Ewing,* 174 Or. 487, 149 P. (2d) 765. It is, however, well established in this jurisdiction, and elsewhere, that it is error to admit evidence tending to prove that the defendant committed similar offenses upon a female other than the prosecutrix. *State v. Linn,* 179 Or. 499, 173 P. (2d) 305; *State v. Poole,* 161 Or. 481, 90 P. (2d) 472; *State v. Putney,* 110 Or. 634, 224 P. 279; *State v. Jensen,* 70 Or. 156, 140 P. 740. The reason for such rule was well stated by Justice Burnett speaking for the Court in the Jensen case:

"To allow such testimony is to infringe the constitutional right of the defendant to demand the nature and cause of the accusation against him. Such procedure might be palliated if there was any provision for giving the defendant notice of the other charges in such cases; but it is utterly repugnant to justice and fair play to accuse a person of a stated crime and make that the excuse for what is really trying him for a number of others by springing them unheralded upon the attention of

the jury to produce a verdict of guilty which might not result except for the bias thus imparted to the minds of the jurors."

In the instant case evidence was admitted that the defendant had sexual intercourse with two of his other minor daughters and that such bestial conduct continued over a course of years. This evidence was highly prejudicial and constituted reversible error. We are not unmindful that there are a few authorities to the contrary cited from other jurisdictions—*Lee v. State,* 246 Ala. 69, 18 So. (2d) 706; *Taylor v. State,* 55 Ariz. 13, 97 P. (2d) 543; *State v Jenks,* 126 Kan. 493, 268 P. 850; *State v. King,* 342 Mo. 975, 119 S. W. (2d) 277—but such holding is decidedly in conflict with the rule in this state and is not in keeping with the overwhelming weight of authority. See note 167 A. L. R. 588.

 The wife of the defendant was permitted to testify over objection that the defendant after his sterilization operation in 1943 "got so bold with the girls and started chasing around with other women." This evidence was prejudicial and should have been stricken on motion of the defendant. There were also admitted in evidence various other matters having no relevancy to the crime charged, namely, that defendant had failed to pay alimony as decreed by the Court and was held in contempt; arrested for arson; and that he had struck his wife. We think it is proper to show in a general way the trouble that arose between the defendant and his wife on account of his alleged relationship with the prosecutrix, but the range of such evidence should be reasonably limited. In other words, the defendant was on trial for only one alleged criminal act.

■ In the light of what has been said relative to the necessity of the State to show that the criminal act was committed on or about August 20, 1948, the following instruction given by the Court is erroneous:

"* * * In this respect the particular date is not material. It is sufficient if the State proves beyond a reasonable doubt that the defendant had sexual intercourse with this girl, in this County and State, sometime within three years next prior to the date of the indictment, and at a time when she was under the age of 16 years."

■ We think the Court also erred in giving the following instruction requested by the State:

"You are instructed that if there is any evidence before you with reference to any acts of intercourse between the defendant and his other daughter or daughters, other than the act alleged to have been committed on or about August 20, 1948, between the defendant and his daughter Barbara *Ann* [Jean] Pace, then you are instructed that the defendant is not on trial for such other acts, if any there were, and cannot be convicted for such other acts, if any there were; but any testimony with reference to such other acts can be considered by you, if you do consider it at all, only for the purpose for which it was admitted, and that is for whatever light, if any, it may shed upon the transaction for which the defendant is on trial—this is, the alleged act of intercourse alleged to have occurred between the defendant and Barbara *Ann* [Jean] Pace."

The above instruction might well have been misleading in causing the jury to consider other offenses committed against the daughters other than the prosecutrix. We think evidence of such other offenses was not admissible for any purpose.

■ The Court did not err in refusing to give the requested instruction number six of the defendant rela-

tive to alibi, as it tended to invade the province of the jury on a question of fact. If the defendant had made a proper request for such instruction, it should have been given. The defendant testified that he went to the hospital on August 23, 1948, and remained there for six days. His wife testified that he was at the hospital during the last week in August. She thought it must have been the 20th to the 23rd of August. The defendant is entitled to have his theory of alibi presented to the jury for what it is deemed to be worth, if an appropriate instruction is requested covering such defense.

 It was improper for the district attorney in his argument to the jury to state what the wife of the defendant had told him in his office about the reason why she had not left the defendant after learning about his improper relations with the prosecutrix. We apprehend that such error will not occur on retrial.

 It might well be argued that the counsel for the defendant, in taking their exceptions and requesting other instructions, waived some of the errors to which attention has been directed, but we think that when the record is considered in its entirety, the defendant has not had the kind of trial contemplated by law and that under such circumstances we may properly take cognizance of such palpable errors.

The judgment of conviction is reversed and the cause remanded for a new trial.