Argued July 15, affirmed September 23, reconsideration denied
October 22, petition for review denied November 19, 1974

# DARRELL DEAN ROOK, *Appellant, v.* CUPP
## (No. 82524), *Respondent.*
### 526 P2d 605

*James D. Vick,* Salem, argued the cause and filed the brief for appellant.

*Timothy Wood,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and TANZER, Judges.

LANGTRY, J.

Petitioner for post-conviction relief (ORS 138.500 through 138.680) in this case seeks to have established a "determinable" standard of competence for indigents' court-appointed counsel in criminal proceedings. Concomitant with this is the proposition that the frequently repeated test that such counsel must not be so inadequate as to render the proceeding a farce or mockery of justice is inadequate as a standard.[1]

Petitioner was convicted of murder. He appealed and was represented by J. Marvin Kuhn of the Oregon Public Defender's office, at that time a six-year veteran deputy, who was aided by a law clerk. There were four possible claims of error that could have been raised. Mr. Kuhn testified in the current proceeding that three of them—concerning defendant's confession,

---

[1] Cases in which the "farce or mockery of justice" standard is mentioned, and perhaps applied, include: Bell v. State of Alabama, 367 F2d 243 (5th Cir 1966), *cert denied* 386 US 916 (1967); Benson v. Gladden, 242 Or 132, 407 P2d 634 (1965), *cert denied* 384 US 908 (1966); and State v. Anderson, 15 Or App 607, 517 P2d 339 (1973), Sup Ct *review denied* (1974).

his accomplice's statement against interest and a possible change of venue—were not raised by him because "I did not think that they were sufficient to obtain a reversal * * * either singly or cumulatively." He testified, "I wanted to emphasize the one issue that I believed was error." This concerned introduction into evidence of cumulative gruesome photographs. Mr. Kuhn's representation came close to producing a reversal. *See State v. Rook,* 10 Or App 367, 499 P2d 830, Sup Ct *review denied* (1972). Mr. Kuhn's testimony also shows that he individually considered including the other three points and that he had good reasons, with reference to each, based on experience and the applicable law, for not doing so.

The trial court at bar rejected petitioner's contentions. Petitioner suggests that the test of competence of counsel should be whether counsel raised *every* issue which *arguably could be* raised. Just to read this proposal is to know that it is a rejection of the use of reasonable professional judgment. We do not think that when the United States Supreme Court in *Anders v. California,* 386 US 738, 87 S Ct 1396, 18 L Ed 2d 493 (1967), used the term "arguably" as describing the issues to be raised by counsel for defendants in criminal appeals it meant that counsel must act as automatons who abandon their own reason, experience and judgment. The situation in *Anders* and other similar cases like *Shipman v. Gladden,* 253 Or 192, 453 P2d 921 (1969), was that counsel's failures had served to totally deprive their clients of appellate review of their convictions. Thus, on their own facts, they substantially differ from the case at bar.

We pointed out in *Storms v. Cupp,* 13 Or App 273, 508 P2d 450, Sup Ct *review denied* (1973), that

what cases like *Anders* and *Shipman* require is that appellate counsel should "present all issues which might *arguably* support *reversal,* and to diligently process the appeal." (First emphasis theirs, second supplied.) To read that language as establishing the requirement that appellate counsel are always obliged to raise all arguable issues is to misinterpret the decision. The intent of the court was not to guarantee that all arguable issues will be raised in every appeal, but that appellate counsel will in every case reasonably exercise professional judgment, thereby assuring defendants of diligently processed appeals.

Courts have begun to question whether the "farce or mockery of justice" standard can continue to survive in view of the United States Supreme Court's clarification of the rule that the right to counsel is the right to effective assistance of counsel:

> "* * * [D]efendants cannot be left to the mercies of incompetent counsel, and * * * judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts." *McMann v. Richardson,* 397 US 759, 771, 90 S Ct 1441, 25 L Ed 2d 763 (1970).

The United States Court of Appeals for the District of Columbia, the Courts of Appeals for the Third, Fifth and Sixth Circuits and the Supreme Court of West Virginia have recently concluded that the inherently ambiguous "farce or mockery" test should be abandoned as a meaningful standard for testing claims of ineffective assistance of counsel.

The District of Columbia Circuit Court, which originally formulated the "farce" test in *Diggs v. Welch,* 148 F2d 667 (DC Cir), *cert denied* 325 US 889,

65 S Ct 1576, 89 L Ed 2002 (1945), in 1970 held in *Scott v. United States,* 427 F2d 609, that the appropriate standard was whether "gross incompetence blotted out the essence of a substantial defense." 427 F2d at 610. That imprecise test was sharpened in *United States v. DeCoster,* 487 F2d 1197 (DC Cir 1973), where the court held that "a defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent and conscientious advocate." 487 F2d at 1202.

In *Beasley v. United States,* 491 F2d 687 (6th Cir 1974), the Sixth Circuit Court adopted the standard defined by the Fifth in *West v. State of Louisiana,* 478 F2d 1026 (5th Cir 1973):

"We hold that the assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. * * * Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner. [Citing authorities.]

"* * * If, however, action that appears erroneous from hindsight was taken for reasons that would appear sound to a competent criminal attorney, the assistance of counsel has not been constitutionally defective. *McMann v. Richardson,* 397 U.S. 759, 90 S. Ct. 1441, 25 L. Ed. 2d. 763 (1970)." 491 F2d at 696.

The Third Circuit Court in *Moore v. United States,* 432 F2d 730 (3d Cir 1970), said:

"* * * [T]he standard of adequacy of legal services as in other professions is the exercise of the customary skill and knowledge which normally prevails at the time and place." (Footnote omitted.) 432 F2d at 736.

Finally, the Supreme Court of West Virginia said:

"Where a counsel's performance, attacked as

ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." *State v. Thomas,* 203 SE2d 445, 461 (W Va 1974).[2]

This brings into consideration counsel's skills as a lawyer and applies a test of reasonableness under the circumstances. We adopt that test. It does not change the rule that a petitioner has the burden of producing evidence supporting the claim of incompetence—*Benson v. Gladden,* 242 Or 132, 407 P2d 634 (1965), *cert denied* 384 US 908 (1966); *Storms v. Cupp,* supra; *Cole v. Cupp,* 3 Or App 616, 475 P2d 428, Sup Ct *review denied* (1970)—and it includes the thought that if any shown incompetence had no effect on the outcome of the case it will be treated as harmless. *Storms v. Cupp,* supra; *State v. Goddard,* 5 Or App 454, 485 P2d 650 (1971).

Our review of the case at bar, as indicated by what we have already said, shows that it cannot be said that Mr. Kuhn's decision not to do the things petitioner now says he should have done was so unreasonable under the circumstances as to amount to incompetence. Indeed, if there were a need to go that far, it shows the exact opposite.

Affirmed.

---

[2] The cases which we have here reviewed are ones in which appellate courts were considering the measure of trial counsel's competence. We see no difference, so far as a rule that tests competence is concerned, between trial and appellate counsel.